[No. 47066–9. En Banc. May 14, 1981.]

AGNES SANCHEZ, *as Administratrix, Petitioner,* v. CHARLES H. HADDIX, ET AL, *Respondents.*

GUSTAVO GONZALEZ, *as Administrator, Petitioner,* v. CHARLES H. HADDIX, ET AL, *Respondents.*

EVARISTO ALVARADO, *as Administrator,* ET AL, *Petitioners,* v. CHARLES H. HADDIX, ET AL, *Respondents.*

*Stephenson & Mahoney,* by *Larry C. Stephenson,* for petitioners.

*Jeffers, Danielson & Foreman, P.S.,* by *Garfield R. Jeffers,* for respondents.

ROSELLINI, J.—These are wrongful death and survival actions brought by personal representatives of six persons who were killed in an automobile collision which occurred at a point where Providence Road intersects with State Route 17. One of the victims was the driver of the disfavored vehicle, a 4-door Chevrolet, which was proceeding east on Providence Road. The others were passengers in the Chevrolet.

The defendant Haddix, who will be referred to herein as the defendant, was driving a flatbed truck with a trailer attached. He was proceeding north on the state highway, in his proper lane of travel and within the speed limit. Entrance to the highway was controlled by stop signs on Providence Road. An automobile approaching the intersection from the west would have been intermittently visible from the highway, but the defendant did not recall seeing the Chevrolet until the moment of collision. There was a sign on the highway which warned that there was a crossroad ahead. The defendant did not recall whether he had seen the sign.

The collision occurred at the center of the northbound lane of travel on State Route 17. After the impact, the

truck traveled 248 feet in a north–northeasterly direction and came to rest in a field beside the highway. The trailer became detached before the truck came to rest and stopped some feet behind it. The Chevrolet skidded, rotating, a distance of 97 feet, also in a northerly but more easterly direction. It was facing south when it came to rest.

The only eyewitness testified for the defense. He had been proceeding south on State Route 17 and was between one–half and three–quarters of a mile from the scene when he saw the automobile proceed through the intersection without stopping. There were no preimpact skid marks.

Reconstruction of the accident was attempted by professional witnesses for both parties. The educational and experiential qualifications of the defense expert were more impressive than those of the plaintiffs' witness. However, the latter had several years of experience in accident reconstruction. It was his theory that the Chevrolet had been barely moving, or stopped, at the moment of impact. He based his theory on the location of shattered glass on the roadway. This glass had evidently been ejected from the windows of the Chevrolet on the driver's side. Some of it had been projected a distance of 100 feet in the northbound lane of State Route 17. The witness believed that the position of the glass indicated that the car could not have been traveling east at any appreciable speed and that all of the momentum of the flying glass was attributable to the speed of the truck on impact. To test this theory, he conducted an experiment, with the assistance of the plaintiffs' attorney. The experiment involved the dropping of glass from a car while it was moving northbound on State Route 17, in a pattern simulating that in which glass was deposited in the accident. The court excluded evidence of this experiment.

When the plaintiffs' expert was asked if he had an opinion of the speed of the automobile, independent of the experiment, he replied that he had. However, he later stated that his alternate means of arriving at the speed of the automobile, the "vector momentum theory", was not reliable under the circumstances of the particular accident.

The plaintiffs' witness offered no opinion as to the movement of the automobile prior to the collision.

At the close of the evidence, the court granted the defendant's motion for dismissal. The Court of Appeals, Division Three, affirmed (unpublished opinion, April 1, 1980).

We affirm the decision below, finding, as did the lower courts, that construing the evidence most favorably for the plaintiffs, there is none upon which a jury could reasonably find that negligence of the defendant was a proximate cause of the accident.

■ The trial court did not abuse its discretion in excluding evidence of the glass experiment. The conditions of the collision and the experiment were patently dissimilar. It is enough to note that the one involved the collision of two vehicles, with the glass being ejected by inanimate forces, while the other employed only one vehicle, with the glass being dropped by human hand. There was no showing that experiments of this kind are an accepted and a proven method of accident reconstruction. Consequently, the offered proof was of minimal, if any, probative value, and would have served more to inject collateral issues than to enlighten the jury. It is not an abuse of discretion to refuse evidence of this character. *Quinn v. McPherson,* 73 Wn.2d 194, 437 P.2d 393 (1968).

The plaintiffs maintain that the opinion of their witness was nevertheless probative. They assert that it was not based upon the experiment alone. There is testimony of the plaintiffs' witness which suggests that he found support for this opinion in the "vector momentum theory". That testimony is considerably weakened by his later testimony, which reveals that he did not feel sufficiently secure in his data to rely upon the momentum theory.

Assuming, however, that the opinion of the witness had a sufficient foundation to justify submitting it to the jury, it falls short of establishing negligence on the part of the defendant. The most that it shows is that the automobile was moving slowly or may have been stopped at the time of

the accident. The question remains whether the defendant should have known that the disfavored driver was not going to yield the right-of-way.

A favored driver on an arterial protected by a stop sign has one of the strongest rights-of-way which the law allows. Such a driver is entitled to rely heavily upon his right-of-way, although he is still required to exercise ordinary care. *Poston v. Mathers,* 77 Wn.2d 329, 462 P.2d 222 (1969). We said in that case that, while all rights-of-way are relative and the duty to avoid an accident at intersections rests upon both drivers, the primary duty to avoid a collision is that of the disfavored driver. The favored driver is entitled to a reasonable reaction time after it becomes apparent in the exercise of due care that the disfavored driver will not yield the right-of-way. This rule applies even though the favored driver did not see the disfavored driver until it was too late to avoid the accident. *Grobe v. Valley Garbage Serv., Inc.,* 87 Wn.2d 217, 551 P.2d 748 (1976). *See also* 3 *Blashfield on Automobiles* § 114.84 (3d ed. F. Lewis 1965).

Here, the evidence is undisputed that the defendant did not see the Chevrolet until it was too late to avoid the accident. Should he have seen it? and should he have been aware, in time to avoid the accident, that the disfavored driver was not going to yield the right-of-way? The answers, of course, depend upon the movement of the automobile prior to the accident.

The only evidence of that movement was that of the eyewitness, who said that the Chevrolet proceeded into the highway and then into the path of the oncoming truck without stopping. There was evidence that an automobile approaching the highway from the west on Providence Road would have been visible to a driver in the defendant's position for 112 feet, or about 1.7 seconds before the instant of collision. There was also evidence that the average time which lapses between the perception of a hazard in front of a driver and his application of the brakes is three-quarters of a second (reaction time).

One theory of the plaintiffs is that, assuming the automobile proceeded directly through the intersection at a speed of 40 to 45 miles per hour, the speed determined by the defendant's expert, the defendant had time to react after the Chevrolet came into view and should have, in the exercise of ordinary care, turned out onto the shoulder. This assumes, first, that when the Chevrolet was 112 feet from the intersection, it should have been apparent that it was not going to stop, an assumption not supported by any evidence in the record. Furthermore, there is no suggestion that the defendant should have applied his brakes, and it is obvious that taking braking distance into account, such a maneuver would not have avoided a collision. The plaintiffs' theory is that the defendant should have turned out onto the right shoulder. There was no evidence that such a maneuver could have been safely executed or that it would have avoided a collision.

It is sheer speculation to surmise that the accident could have been avoided in this manner. If the Chevrolet was proceeding through the intersection at 45 miles per hour, without slowing, the evidence shows that a collision was bound to occur, whether the truck (which was over 50 feet long) was on the pavement or on the shoulder at the point of impact.

The plaintiffs' alternate theory is that the automobile was stopped on the road (in accord with their expert's opinion) and that it had been there a sufficient length of time to warn the approaching defendant that the right–of–way would not be yielded. Again, they say that the accident could have been avoided by turning onto the shoulder. The flaw in this is that there was no evidence tending to show how long the automobile had been in the intersection, other than that of the eyewitness. His testimony was that the car did not stop or slow down. The expert offered no opinion on this matter.

The jury (if it believed the plaintiffs' expert that the car was stopped or barely moving at the time of the collision) might speculate that it had been stalled there for some

time, or that it had come to a stop at the intersection and then started up again just as the truck was approaching. Or it might surmise that the Chevrolet had proceeded slowly into the intersection. In either of the latter circumstances, a favored driver could reasonably believe that the disfavored driver would yield the right–of–way, as she was required by law to do.

The trouble with the plaintiffs' position is that it requires the jury to speculate as to what movements the automobile made before the collision, and also as to what action on the part of the defendant could have avoided the accident.

Where causation is based on circumstantial evidence, the factual determination may not rest upon conjecture; and if there is nothing more substantial to proceed upon than two theories, under one of which a defendant would be liable and under the other of which there would be no liability, a jury is not permitted to speculate on how the accident occurred. *Arnold v. Sanstol,* 43 Wn.2d 94, 260 P.2d 327 (1953).

As stated in *Grobe v. Valley Garbage Serv., Inc., supra,* where circumstantial evidence is relied upon to prove negligence, the circumstances must, with reasonable certainty, lead to the conclusion for which they are adduced.

Here, there was no evidence that the defendant saw or should have seen that the Chevrolet was not going to yield the right–of–way in time to avoid the accident. Upon a record so bare of essential evidence, to allow the jury to speculate upon the movements of the automobile prior to the accident would be to deprive the defendant of the advantage which the law has accorded him as the favored driver.

The decision is affirmed.

BRACHTENBACH, C.J., and STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.

Reconsideration denied July 10, 1981.