[No. 8615-4-I. Division One. June 8, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. JOHNNY T. MULDER, *Appellant*.

*Cody, Hatch & Bedle, Inc., P.S.,* and *George W. Cody,* for appellant.

*Russ Juckett, Prosecuting Attorney,* and *Vickie K. Wallstrom* and *James B. Roche, Deputies,* for respondent.

ANDERSEN, J.—

## FACTS OF CASE

The defendant, Johnny T. Mulder, appeals from the judgment and sentence entered following a jury verdict finding him guilty of second degree felony–murder.

From the limited record filed in this court, it appears that William Matthew Bowman, age 5, had been living with the defendant and his wife for 4 months prior to his death. The defendant was the child's godfather. On September 30, 1979, the child was admitted to Stevens Memorial Hospital suffering from massive physical injuries. An internal abdominal injury was surgically repaired and the child was

immediately transferred to Children's Orthopedic Hospital, where he died on October 23, 1979. Following the child's death, the State charged the defendant with second degree felony–murder.

At trial a medical doctor, Dr. Pendergrass, was permitted to testify over objection that in his opinion the injuries were the result of "battered child syndrome", which he proceeded to define.

One issue is presented by this appeal.

## ISSUE

Did the trial court err in permitting a doctor to testify concerning the effects of "battered child syndrome"?

## DECISION

CONCLUSION. Under the facts of this case, there was no error in permitting the treating physician to give his expert opinion that the cause of death was "battered child syndrome".

■■ An expert witness may render an opinion concerning a scientific principle provided the principle has gained general acceptance in the scientific community. *State v. Canaday,* 90 Wn.2d 808, 812–14, 585 P.2d 1185 (1978). *See also* ER 702. Although no reported Washington cases have considered the issue, the battered child syndrome has become a well recognized medical diagnosis. The diagnosis is dependent on inferences, not a matter of common knowledge, but within the area of expertise of physicians whose familiarity with numerous instances of injuries accidentally caused qualifies them to express with reasonable probability that a particular injury or group of injuries to a child is not accidental or is not consistent with the explanation offered therefor but is instead the result of physical abuse by a person of mature strength. *See generally* Kempe, Silverman, Steele, Droegemueller & Silver, *The Battered Child Syndrome,* 181 J.A.M.A. 17 (1962); Annot., *Admissibility of Expert Medical Testimony on Battered Child Syndrome,* 98 A.L.R.3d 306 (1980).

Expert testimony that a child was a victim of "battered

child syndrome" has been held admissible and not an invasion of the jury's domain, even though by this diagnosis the physician draws an inference of nonaccidental injury, a function usually left for the jury. *People v. Jackson,* 18 Cal. App. 3d 504, 95 Cal. Rptr. 919 (1971); *People v. Ellis,* 589 P.2d 494 (Colo. App. 1978); *People v. Platter,* 89 Ill. App. 3d 803, 412 N.E.2d 181 (1980); *People v. De Jesus,* 71 Ill. App. 3d 235, 389 N.E.2d 260 (1979); *State v. Wilkerson,* 295 N.C. 559, 247 S.E.2d 905, 98 A.L.R.3d 285 (1978); *People v. Henson,* 33 N.Y.2d 63, 304 N.E.2d 358, 349 N.Y.S.2d 657 (1973).

The use of the term "battered child syndrome" by a physician does not, of course, necessarily indicate any wrongdoing by a particular defendant. *People v. Jackson, supra.* Evidence must still be produced to establish that it was the defendant who caused the injuries in question. The trier of fact still must determine the weight to be given the expert's testimony.

We are mindful that the emotional appeal of an evidentiary presentation using the term "battered child syndrome", particularly in the possibly highly charged atmosphere of a criminal prosecution involving the tragedy of a child's death, can be particularly strong—perhaps to the point of unduly influencing a jury. A trial court must, therefore, in determining whether or not to allow a witness to use the term "battered child syndrome" (as distinguished from testifying to the nature of the injuries and their apparent cause as, for example, the injuries being multiple, severe, occurring repeatedly over a period of time, etc., as the case may be), carefully weigh its probative value against the potential of that term for causing prejudice. *See State v. Stevenson,* 16 Wn. App. 341, 346, 555 P.2d 1004 (1976).

Here, the trial court did not abuse its discretion by admitting the testimony. Although the definition employed by Dr. Pendergrass of "battered child syndrome" was unduly broad, it was not improper when viewed in context with other evidence admitted on the subject. Any deficiency

was adequately dealt with during extensive cross-examination. Furthermore, any error in that connection was harmless because another treating physician, Dr. Feldman, testified in more precise detail that the child's death resulted from nonaccidental means.

Affirmed.

RINGOLD, A.C.J., and DURHAM, J., concur.