[No. 10203–6–I.   Division One.   January 31, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS JEFFREY STEWARD, *Appellant.*

*Allen & Hansen* and *Richard Hansen,* for appellant (appointed counsel for appeal).

*Norm Maleng, Prosecuting Attorney,* and *Rebecca Roe, Deputy,* for respondent.

WILLIAMS, J.—Thomas Jeffrey Steward was convicted by a jury of second degree murder. His motion for a new trial was denied. Steward appeals from the judgment; we reverse.

The case involves the death of a 21–month–old child. According to Steward, he had undertaken to babysit the child on 12 June 1980 at 8 p.m. at the request of the mother, a friend of his. Later Steward and the child visited a friend, returning to his home about 1 a.m. Shortly thereafter he prepared to leave to take the child to the mother and, in doing so, put the child on the porch while he turned to lock the door. The child fell head first down the stairs, apparently sustaining serious injury. Steward immediately brought the child to the Eastside Group Health Hospital where he was treated until taken to Group Health Central Hospital. From thence he was transferred to Children's Orthopedic Hospital where he died that afternoon.

At the trial, the testimony of two forensic pathologists called by the State was that the child died of blunt impact injuries to the right side of the abdomen. Both pathologists said that a fall down the stairs would not have caused those injuries, sustained during the period that Steward had exclusive care of the child.

A pathologist called by the defense testified that the cause of death was a combination of injuries incurred when

the child was caught between two bicycles about 2 weeks previously, from the fall down the stairs and from the cardiopulmonary resuscitation treatment administered at Group Health Central.

A fourth pathologist called by the State as a rebuttal witness testified that "babysitting boyfriends" of single mothers are most likely to be child abusers.

Steward first assigns error to this testimony which appears in the record as follows:

> Q In those injuries, the type of injuries that were the more serious, have you personally done statistics on who are the persons generally responsible for those assaults?
> A Yes.
> Q And what are those statistics, what do they reveal?
> MR. HANSEN: The same objection, your Honor.
> THE COURT: Overruled. He may answer.
> A In nine out of—let me modify that. That is sixteen serious cases. I said eighteen. I meant sixteen. Out of that, nine out of those were the children of single mothers, and eight out of the nine of the children of single mothers, the injuries were inflicted by either live in or babysitting boy friends.

█ This testimony was adduced in connection with the witness' theory that recently child abuse is taking the form of sudden impulsive acts of violence rather than the malnourishment and repeated fractures and bruises seen 10 or 15 years ago. The rule is that an expert witness may render an opinion concerning a scientific principle provided the principle has gained general acceptance in the scientific community. *State v. Mulder,* 29 Wn. App. 513, 629 P.2d 462 (1981). In that case it was held that expert testimony of a "battered child syndrome" was admissible although, because of the emotional appeal of an evidentiary presentation using that term, its probative value must be carefully weighed against the potential prejudicial effect.

The quoted testimony was not specifically offered in proof of a classic "battered child syndrome," although that was undoubtedly the general idea. But whatever the theory, the fact is that an expert with impressive credentials stated

on the basis of experience in a few cases that serious injuries to children were often inflicted by either live–in or babysitting boyfriends. There was no scientific basis for that testimony and it was certainly highly prejudicial. To admit it was reversible error.[1]

█ Steward next assigns error to testimony of one of the pathologists in the State's case in chief that the child could not possibly have fallen down the stairs unless he had considerable horizontal impetus. As a forensic pathologist, the witness was trained in the nature, cause and effect of injury. The court acted within its discretion in admitting the testimony. *Church v. West,* 75 Wn.2d 502, 452 P.2d 265 (1969); *State v. Tatum,* 58 Wn.2d 73, 360 P.2d 754 (1961).

Because we remand this cause for a new trial, we need not address Steward's other contentions on appeal.

The judgment is reversed and the cause is remanded for a new trial.

ANDERSEN, C.J., and CORBETT, J., concur.

---

[1]Because the pathologists called by the State were so certain, we have considered the possibility of harmless error in the testimony of the rebuttal witness. *State v. Tharp,* 96 Wn.2d 591, 637 P.2d 961 (1981). But because the pathologist called by the defendant was no less certain, there was a reasonable probability of a different result.