[No. 11016–1–I.   Division One.   July 12, 1983.]

The State of Washington, *Respondent,* v. Donald Irving Maule, *Appellant.*

288

*Julie Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Jennifer Eychaner, Deputy,* for respondent.

SCHOLFIELD, J.—Defendant Donald Irving Maule appeals his conviction, following jury trial, on two counts of first degree statutory rape. We reverse.

At the time of the alleged incidents, Maule was living with Sherry S. Maule's son and his daughter, Kimberly, who was 8 at the time of trial, and Sherry's daughter, Denise, who was 5 years old at the time of trial, also lived with

them. On May 15, 1981, Sherry contacted the sexual assault center at Harborview Medical Center (Center) to report alleged incidents of child sexual abuse. Nancy Ousley, from the Center, interviewed Denise on May 18 and interviewed Kimberly about a week later. Janice London from Child Protective Services also interviewed Kimberly. As a result of the ensuing investigation, Maule was charged with rape of both Denise and Kimberly.

Both girls were permitted to testify at trial. Although the trial judge expressed some "misgivings" about Denise's competency to testify, he believed Denise could discern right and wrong, that her memory of events and her capacity to describe them were "sufficient" and that she would be able to say what she recalled with the assistance of anatomically correct dolls.

Kimberly testified that "[m]ore than one time" Maule put one of his fingers into her vagina, pointing to indicate she understood where her vagina was located. Kimberly also testified that "[m]ore than one time" her father placed his finger in Denise's vagina. Denise testified that Maule placed his finger in her vagina, using an anatomically correct doll to demonstrate, and also testified that Maule touched Kimberly in the same manner. On cross examination, many of Denise's answers to questions were unresponsive, contradicted other answers, or were highly improbable.

Nancy Ousley testified that she had worked with victims of sexual abuse at the Center for 5 years; that 54 to 55 percent of the sexual assault center's caseload of about 750 involved victims under the age of 16; that "[t]he majority [of cases] involve a parent–figure, a male parent–figure, and of those cases that would involve a father–figure, biological parents are in the majority"; and that "the great majority" of cases involved abuse "over an extended period of time as opposed to a single incident." Ousley also testified concerning the characteristics of abused children in general,[1] and

---

[1]Ousley identified these characteristics as including: "sleep disruption of some kind, appetite disruption, nightmares fairly common sort of reaction; sometimes

stated that in her opinion, both Kimberly and Denise manifested characteristics during their interviews consistent with those of sexually abused children. Ousley also testified as to her usual procedure for interviewing a suspected child sexual abuse victim and that, while she did not recall exactly the procedure used with Denise, she "guess[ed] that it would be fairly consistent with what I have just explained."

On cross examination, Ousley was asked, "Have you ever known any children who have lied?" Ousley replied, "In five years maybe one or two." On redirect, Ousley was asked if her testimony concerning "maybe one or two that have lied" concerned children lying about sexual abuse. She replied that "I should say that those isolated cases have been collective to our agency, and it[']s been very unusual to have false reports from children. There generally has been some sort of abuse that is going on." A defense objection to this testimony was overruled on the grounds that the subject had been opened upon cross examination. The State thereafter elicited additional testimony upon redirect as to the reasons which make it unusual for children to fabricate such stories.

Janice London's testimony concerned her interview of Kimberly, Kimberly's conduct and appearance during the interview, and London's subsequent report to the police. This evidence was adduced to show London did not subject the children to any improper influence. The State did not elicit testimony concerning statements made by Kimberly or Denise during interviews conducted by either Ousley or London.

Maule's defense was that the alleged incidents of sexual abuse were fabrications attributable to the influence of the investigators and of Sherry, who was allegedly embittered

other behavior changes might be noted, particularly the child being withdrawn or perhaps having regressed in their behavior, acting like a younger child, being rather clingy to the mother, being afraid of being alone with a particular person, something like that."

by the breakup of her relationship with Maule and who "punished [Denise] if she doesn't do what her mother wants her to." Maule testified that he had been infected with pinworms; that Kimberly had displayed symptoms of the infection; and that he had all the children pull down their pants while he checked their rectal areas for signs of pinworms. Maule denied placing his finger in either girl's vagina. Maule's personal physician confirmed that Maule had been infected with pinworms, but could not commend rectal examination to discover pinworms in children older than "diaper–aged" and did not recall advising Maule to examine his children for pinworms.

The jury thereafter found Maule guilty on one count alleging statutory rape of Kimberly and one count alleging statutory rape of Denise.

We first consider Maule's contention that the trial judge erred in admitting Nancy Ousley's testimony concerning the incidence of and typical characteristics of child sexual abuse cases, Denise's and Kimberly's manifestation of such characteristics, and her procedures for investigation of child sexual abuse cases. Maule argues on appeal that Ousley was not qualified as an expert and that the trial judge erred by failing to determine "whether the scientific principle from which deductions are made is sufficiently established to have gained general acceptance in the scientific community." *State v. Canaday,* 90 Wn.2d 808, 812, 585 P.2d 1185 (1978). We do not agree.

Although Ousley's testimony was the subject of a pretrial motion in limine, the record discloses that defense counsel sought to exclude her testimony solely on hearsay and relevancy grounds. Defense counsel's statement that Ousley "is not a doctor" was insufficient to apprise the trial judge that Ousley's qualifications as an expert and/or the scientific principles underlying her conclusions were challenged. No error can be assigned to an evidentiary ruling where the objection at trial was insufficient to apprise the trial judge of the grounds of objection asserted on appeal. *State v. Wixon,* 30 Wn. App. 63, 631 P.2d 1033 (1981).

Consequently, we will assume for purposes of this appeal that the trial judge properly exercised his discretion in determining the preliminary question of whether Ousley qualified as an expert witness whose testimony would "assist the trier of fact." ER 702, 104; *State v. Fagundes*, 26 Wn. App. 477, 614 P.2d 198 (1980).

Ousley's testimony concerning her duties at the sexual assault center, the number of cases she handled, and the percentage of those cases involving children were therefore relevant to her qualifications as an "expert" in the field of child sexual abuse and, consequently, were admissible. Likewise, taking Ousley's qualifications as an expert as given, her testimony concerning the typical characteristics of a sexually abused child and whether Denise and Kimberly exhibited such characteristics was relevant. The real question was whether a proper foundation had been laid to make the opinion admissible under ER 702 and 703. We will address those issues in more detail later in this opinion. This evidence was adduced over general or relevancy objections by the defense which were not sufficiently specific to preserve error.

Ousley's testimony that the "great majority" of child abuse cases involved abuse over an "extended period of time" was adduced without defense objection. Ousley's testimony as to her usual interviewing practices was relevant to prove that her interviews with Kimberly and Denise were in conformity with such practices, ER 406, and conducted without improper influence on Ousley's part. Ousley's testimony on redirect, including instances of children lying about sexual abuse, was proper testimony on a subject opened on cross examination. No error was preserved as to admission of this evidence.

Defense counsel did, however, object on relevancy grounds to Ousley's testimony that a majority of child abuse cases involved a male parent figure, with biological parents in the majority. The State views this evidence as merely buttressing Ousley's qualifications as an expert. We do not agree.

■ Notwithstanding the State's protestations, we are persuaded that the testimony objected to was offered as substantive evidence to help persuade the jury that Maule was guilty. Substantive evidence prejudicial to the opposing party does not lose its prejudicial character because it is offered during qualification of an expert. Its admissibility must be determined pursuant to ER 403 the same as any other evidence which is relevant but involves a danger of unfair prejudice. The State does not contend that sexual abuse committed by father figures differs so materially from sexual abuse committed by persons who are not father figures that an expert in the cases of the latter type might be thought less qualified to identify examples of the former type. The State identifies no reason for establishing Ousley's credentials in a subfield of child sexual abuse by biological fathers as opposed to all other father figures. The relevancy of this evidence is not discernible.

On the other hand, the prejudice to Maule was great. In *State v. Steward,* 34 Wn. App. 221, 224, 660 P.2d 278 (1983), we held that it was reversible error to admit "expert" testimony in a second degree murder prosecution of a babysitting boyfriend that, on the basis of the expert's experience, "serious injuries to children were often inflicted by either live–in or babysitting boyfriends." We consider equally prejudicial the admission of "expert" testimony that the majority of child sexual abuse cases involve "a male parent–figure, and of those cases that would involve a father–figure, biological parents are in the majority" in a prosecution of a defendant who is the father figure of one of the alleged victims and the father of the other. Such evidence invites a jury to conclude that because the defendant has been identified by an expert with experience in child abuse cases as a member of a group having a higher incidence of child sexual abuse, it is more likely the defendant committed the crime. Admission of this testimony was reversible error. *State v. Steward, supra.*

Because issues relating to Ousley's qualifications as an expert have been raised on appeal and may arise on

remand, we would be remiss if we failed to note our serious reservations concerning testimony of this type, at least when no better foundation is laid for its admission than occurred here.

■ Both before and after adoption of Washington's Rules of Evidence, courts have required that the factual, informational, or scientific basis of an expert opinion, including the principle or procedures through which the expert's conclusions are reached, must be sufficiently trustworthy and reliable to remove the danger of speculation and conjecture and give at least minimal assurance that the opinion can assist the trier of fact. *Sanchez v. Haddix,* 95 Wn.2d 593, 627 P.2d 1312 (1981); *State v. Canaday, supra; Twidwell v. Davidson,* 54 Wn.2d 75, 338 P.2d 326 (1959). ER 702 and ER 703 implement these well established principles.

ER 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

ER 702 addresses two questions: the permissible means by which an expert is qualified and the admissibility of the expert's opinion, *i.e.,* whether it "will assist the trier of fact to understand the evidence or to determine a fact in issue". An appropriate analysis of whether such testimony "will assist the trier of fact" is found in 3 J. Weinstein & M. Berger, *Evidence* ¶ 702[01], at 702-7 through 702-8 (1982) (hereinafter Weinstein):

> 1) will expert testimony help the jury in resolving a controverted issue . . .; 2) if a novel form of expertise is being offered, is the proffered expert's specialized knowledge of a kind which will enhance the jury's understanding . . .; 3) does this particular expert have sufficient specialized knowledge to assist the jurors in this case . . .?

Weinstein further states that whether the proffered testi-

mony will help the jury depends on:

> (1) the court's evaluation of the state of knowledge presently existing about the subject of the proposed testimony and (2) on the court's appraisal of the facts of the case.

Weinstein ¶ 702[02], at 702–11. Where expert testimony is offered in a novel field, the determination of

> [w]hether or not the scientific principles involved have been generally accepted by experts in the field may still have a bearing on reliability and consequent probative value of the evidence. . . . The expert's qualifications and stature, the use which has been made of the new technique, the potential rate of error, the existence of specialized literature, . . . may all enter into the court's assessment. Opinions which are based in large measure on a subjective analysis may have less probative value because it may be difficult to evaluate the skill of the expert in extrapolating a judgment from the scientific data.

(Footnotes omitted.) Weinstein ¶ 702[02], at 702–18 through 702–19. ER 702 thereby permits the trial judge, in determining if the opinion is admissible as an expert opinion, to assess the reliability of the theory, methodology, procedure or principle propounded by the expert and the probative value of his testimony.

ER 703, in contrast, permits the trial judge to assess the reliability of the underlying facts or data upon which the expert's opinion is based. The rule states:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Ousley's testimony may present issues arising under both ER 702 and ER 703.

For example, Ousley's theory that sexually abused children manifest particular identifiable characteristics was not shown to be supported by accepted medical or scientific

opinion. *Cf. State v. Mulder,* 29 Wn. App. 513, 515, 629 P.2d 462 (1981) ("'battered child syndrome'"). If no correlation between particular characteristics and established cases of sexual abuse is shown (through Ousley's own scientific study or other professional studies), such testimony amounts to a discussion of child sexual abuse in general and is therefore collateral to the question of whether a particular child was sexually abused. *See State v. Barry,* 25 Wn. App. 751, 760, 611 P.2d 1262 (1980) (testimony of expert on "the general subject of the reliability of eyewitnesses"). Under such circumstances, a trial judge could reasonably conclude the proffered testimony lacks sufficient probative value to "assist the trier of fact" as required by ER 702.

Even if Ousley's theory possesses probative value, in the abstract, the record does not show the underlying facts or data are of a type "reasonably relied upon by experts in the particular field". ER 703. There is no evidence that Ousley conducted any statistical study or that any other expert in the field made such a study. There is no evidence that people working in the field attach particular significance to one or more characteristics and whether certain broad characteristics noted by Ousley, *e.g.,* "nightmares," are, without further explanation, considered adequate indicia of child sexual abuse. Nor is there evidence showing how, for Ousley's analysis, a case of child sexual abuse is established. Is it by criminal conviction, agreement to accept treatment, admission by the defendant, or someone's opinion? What is the basis of analysis employed by other professionals in the field?

Our conclusion that Ousley's testimony included inadmissible evidence is dispositive of Maule's appeal. Our views as to Maule's remaining assignments of error are summarized as follows: (1) Maule's pro se brief presents no meritorious issues; (2) Maule's objections to testimony concerning the girls' character were not properly preserved for appeal; and (3) our analysis of the admittedly close question of Denise's competency as a witness would not aid the

trial judge because, if called to testify again, she will be 2 years older than she was at Maule's earlier trial. Discussion of one remaining assignment of error may, however, be helpful to the trial judge on remand.

The defense called three of Maule's neighbors to testify as to Kimberly's and Denise's reputation for truth and veracity. Each testified that the girls' reputations for truth and veracity were poor. The State's objections to further inquiry as to whether, from the witness' knowledge of the girls' reputations, the witness would believe the girls "under oath" were sustained. Maule contends the trial judge erred in sustaining the State's objection to these questions. We do not agree.

ER 608(a) provides:

> The credibility of a witness may be attacked or supported by evidence in the form of reputation, but subject to the limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, . . .

ER 608 "differs from Federal Rule 608 in that it does not authorize the introduction of evidence of character in the form of an opinion." Comment, ER 608, 91 Wn.2d 1148 (1978). To ask a witness if he would believe another witness under oath, without further qualification, is to call for the witness' personal opinion and is therefore impermissible. *State v. Swenson*, 62 Wn.2d 259, 282–83, 382 P.2d 614 (1963). The early case of *State v. Hooker*, 99 Wash. 661, 666–72, 170 P. 374 (1918) would permit the question and answer objected to. ER 608 is to the contrary. The trial judge did not err in sustaining the State's objections to these questions.

Cases involving young children present difficult proof problems, and we are naturally reluctant to require a retrial. However, all persons charged with a criminal offense are entitled to a fair trial, and this means the Rules of Evidence must be applied evenhandedly in all cases.

Reversed and remanded.

ANDERSEN, C.J., concurs.

WILLIAMS, J. (concurring)—I agree that the case must be retried because of the evidence supplied by an expert that a majority of child abusers are "male parent figure[s]." That testimony, although a nonsequitur, tended to establish the defendant as guilty. There is no probative value to the characterization because qualifying for social classification as a "parent figure" does not make a person more likely to be an abuser of children.

ANDERSEN, C.J., concurs with WILLIAMS, J.