[No. 7121-9-III. Division Three. December 18, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL EARL BLACK, *Appellant.*

*Michael Earl Black*, pro se, *Richard A. Hansen, David Allen*, and *Allen & Hansen, P.S.*, for appellant.

*Donald C. Brockett, Prosecuting Attorney*, and *Sam F. Cozza, Deputy*, for respondent.

THOMPSON, J.—Mr. Black was charged by information with one count of rape in the second degree. After a bench trial, he was found guilty of rape in the third degree. He appeals the conviction. We reverse and remand.

The conviction of Mr. Black for third degree rape arose from an incident that occurred in August 1984 involving the defendant and a neighbor and close family friend, R.J. R.J. was 16 at the time. Both Mr. Black and R.J. essentially related the same version of events leading up to sexual intercourse. However, R.J. testified the defendant became violent after she refused his proposal to "hug" and "touch" her in exchange for $100 and forced her by threat to submit. He disputed her account and maintained she was a willing participant.

Friends of R.J. testified she called them the morning of the incident and told them basically the same version to which she testified. Objections to this testimony as hearsay were overruled. When R.J.'s mother returned home approximately 1 week later, R.J. told her what had happened. Her mother took her to Deaconess Hospital where she was examined by Dr. Nania. She also spoke to police at

that time.

Over defense objection, the State introduced the testimony of Ms. Kelene Bermensolo, a counselor for Lutheran Social Services Rape Crisis Network. She testified to her experience in counseling victims of rape and sexual assault and her educational background. She was allowed to give an opinion that R.J.'s symptoms fit a specific profile for rape victims and that she had suffered from emotional trauma.

The trial judge in his oral opinion stated he could not find that the element of forcible compulsion was proved beyond a reasonable doubt. However, he did find defendant guilty of the lesser included offense of third degree rape because he was convinced beyond a reasonable doubt that R.J. did not consent to sexual intercourse. The record reflects he considered Ms. Bermensolo's testimony concerning rape trauma syndrome in reaching his decision.

The primary issue is whether the admission of expert opinion testimony that the complaining witness had exhibited emotional trauma consistent with the rape trauma syndrome was error. The State introduced the testimony of Ms. Bermensolo to "offer an opinion based on her background, her training and practical experience in dealing with victims". In laying a foundation for the testimony, Ms. Bermensolo testified: "[I]n every rape victim that I have seen they exhibit consistent symptoms. . . . For example, body soreness, guilt, shame, feelings around about the trial, nightmares, flashbacks, these are common symptoms that rape victims experience. *There is a specific profile for rape victims and [R.J.] fits in.*" (Italics ours.) On defense voir dire, it was revealed her opinion was based on the theory known as rape trauma syndrome developed by Ann Burgess and Lynda Holmstrom.[1] Defense counsel objected to allow-

---

[1]The term "rape trauma syndrome" originated from studies by Ann Burgess and Lynda Holmstrom of 92 patients who entered the emergency ward of Boston City Hospital, having been victims of forcible rape. Burgess & Holmstrom, *Rape Trauma Syndrome,* 131 Am. J. Psychiatry 981 (1974). Their study showed that rape victims exhibit a 2–phase group of symptoms, labeled by the researchers as

ing any statements "as an expert as to whether or not there has been a sexual assault in the case of Michael Black and [R.J.] . . ." The objection was overruled. Mr. Black contends it was error to admit this testimony. He challenges the reliability and general acceptance of rape trauma syndrome within the relevant scientific community. Further, he argues such testimony constitutes an opinion the complaining witness was telling the truth, thus invading the exclusive province of the trier of fact. We conclude an inadequate foundation was laid for introduction of the rape trauma syndrome evidence.

The admission of expert opinion testimony is governed by ER 702. It provides:

### TESTIMONY BY EXPERTS

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu- cation, may testify thereto in the form of an opinion or otherwise.

Three threshold requirements need be met before expert testimony is admissible under this rule: (1) the witness must qualify as an expert; (2) the opinion must be based upon an explanatory theory generally accepted in the relevant scientific community; and (3) the expert testimony would be helpful to the trier of fact. *State v. Allery*, 101 Wn.2d 591, 596, 682 P.2d 312 (1984); *State v. Canaday*, 90 Wn.2d 808, 585 P.2d 1185 (1978); *see generally* 5A K. Tegland, Wash. Prac., *Evidence* § 288, at 25 (2d ed. 1982).

The decision to admit expert testimony is within the sound discretion of the trial court, *State v. Mak*, 105 Wn.2d

---

rape trauma syndrome. Phase 1 is the acute phase, occurring right after the attack, characterized by either extreme fear, anger, and anxiety or a hiding of emotions and relative calm. It also may include various physical effects such as soreness, fatigue, headaches, and sleep disorders. Phase 2, or the long term reorganization process, can include increased activity such as changing residences, changing phone numbers, turning to friends and relatives for support, nightmares, phobic reactions such as fear of being alone or fear of crowds, sexual fears, and broken relationships.

692, 715, 718 P.2d 407 (1986), and will not be disturbed absent a showing of abuse of discretion. *Mak; State v. Petrich,* 101 Wn.2d 566, 575, 683 P.2d 173 (1984).

However, the rule permits evidence on such theories as rape trauma syndrome only where the court is presented with the scientific basis for the expert's opinion, including the principle or procedures through which the expert's conclusions are reached. *State v. Maule,* 35 Wn. App. 287, 294, 667 P.2d 96 (1983). Only then can the trial court, which is in the best position to assess the reliability of the theory, its methodology and procedure, and its helpfulness to the trier of fact, properly decide its admissibility. *Maule,* at 295. *See also* ER 703.

Washington courts have allowed expert opinions on reliable and scientifically accepted syndromes where the basis for such opinions were shown. *State v. Allery, supra* at 597 (battered woman syndrome); *State v. Mulder,* 29 Wn. App. 513, 629 P.2d 462 (1981) (battered child syndrome). Those courts found such testimony "helpful to a jury in understanding a phenomenon not within the competence of an ordinary lay person". *Allery,* at 597. Even where the diagnosis drew an inference that an assault had occurred, the *Mulder* court rejected the notion that this invaded the province of the trier of fact, noting that it is for the trier of fact to ultimately determine the weight given the expert's testimony. *Mulder,* at 516.

On the other hand, courts in this state have rejected similar testimony when not shown to be supported by accepted medical or scientific opinion, *Maule,* at 296; *State v. Steward,* 34 Wn. App. 221, 660 P.2d 278 (1983), and generally reject expert testimony on new theories when the record fails to establish its reliability and acceptance within the relevant scientific community. *Burkett v. Northern,* 43 Wn. App. 143, 715 P.2d 1159 (1986).

The record here fails to establish "rape trauma syndrome" to be sufficiently reliable and accepted within the relevant scientific community to permit admission of Ms. Bermensolo's testimony that R.J. "fit" the syndrome. The

only evidence the trial court had before it was the testimony of the rape crisis counselor based upon "every rape victim that I have seen". In addition, she mentioned the study by Burgess and Holmstrom. As the court stated in *Maule,* at 296:

> [T]he record does not show the underlying facts or data are of a type "reasonably relied upon by experts in the particular field". ER 703. There is no evidence that Ousley conducted any statistical study or that any other expert in the field made such a study. There is no evidence that people working in the field attach particular significance to one or more characteristics and whether certain broad characteristics noted by Ousley, *e.g.,* "nightmares," are, without further explanation, considered adequate indicia of child sexual abuse.

Thus, the court abused its discretion when it admitted the rape trauma syndrome testimony.

While we hold that the admission of testimony concerning rape trauma syndrome was error, and reverse on that basis, we make clear that we do not pronounce any opinion as to the admissibility of rape trauma syndrome under a properly laid foundation. We note that of the jurisdictions squarely presented with the issue, there is disagreement as to its admissibility for a variety of reasons. *See generally* Annot., *Admissibility, at Criminal Prosecution, of Expert Testimony on Rape Trauma Syndrome,* 42 A.L.R.4th 879 (1985).

Some courts hold rape trauma syndrome is not the type of scientific test that accurately and reliably determines whether a rape has occurred. *State v. Taylor,* 663 S.W.2d 235 (Mo. 1984); *People v. Bledsoe,* 36 Cal. 3d 236, 681 P.2d 291, 203 Cal. Rptr. 450 (1984); *State v. Saldana,* 324 N.W.2d 227, 229–30 (Minn. 1982). Other courts allow it, finding it accepted and reliable. *Commonwealth v. Gallagher,* 353 Pa. Super. 426, 510 A.2d 735 (1986); *State v. Huey,* 145 Ariz. 59, 699 P.2d 1290 (1985); *State v. Liddel,* ___ Mont. ___, 685 P.2d 918, 42 A.L.R.4th 865 (1984); *People v. Reid,* 123 Misc. 2d 1084, 475 N.Y.S.2d 741 (Sup. Ct. 1984); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982); *State*

*v. LeBrun,* 37 Or. App. 411, 587 P.2d 1044 (1978). The commentators generally approve of its admission. *See* Massarro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn. L. Rev. 395 (1985); Comment, *Expert Testimony on Rape Trauma Syndrome: Admissibility and Effective Use in Criminal Rape Prosecution,* 33 Am. U. L. Rev. 417 (1984). Finally, some of the literature suggests it has gained some acceptance.[2]

On retrial, the admissibility of rape trauma syndrome testimony must be decided within the context of the testimony presented at that time. In addition to determining whether it is reliable and accepted in the relevant scientific community, the court must also consider whether it would aid the trier of fact and whether its probative value is outweighed by the potential for causing undue prejudice. ER 403; *Mulder,* at 516.

██ Other evidentiary issues raised by Mr. Black relating to the admission of certain evidence may arise on remand. At trial, after admission of Ms. Bermensolo's testimony regarding "rape trauma syndrome", the defendant attempted to present testimony by Mrs. Black that R.J. had experienced behavioral changes in years past, apparently attempting to explain either R.J.'s motive for fabrication or another explanation for R.J.'s "rape trauma syndrome" symptoms. The evidence was ruled inadmissible as irrelevant and too remote. A finding by the trial court

---

[2]*See* N. Andreasen, *Posttraumatic Stress Disorder,* in 1 *Comprehensive Textbook of Psychiatry* 918 (4th ed. 1985); Atkeson, Calhoun, Resick & Ellis, *Victims of Rape: Repeated Assessment of Depressive Symptoms,* 50 J. Consulting & Clinical Psychology 96 (1982); Becker, Abel & Skinner, *The Impact of a Sexual Assault on the Victim's Sexual Life,* 4 Victimology 229 (1979); S. Katz & M. Mazur, *Understanding the Rape Victim: A Synthesis of Research Findings* 215–31 (1979); Nadelson, Notman, Zackson & Gornick, *A Follow–up Study of Rape Victims,* 139 Am. J. Psychiatry 1266 (1982); Ruch & Leon, *Type of Sexual Assault Trauma: A Multidimensional Analysis of a Short–term Panel,* 8 Victimology 237 (1983). *See also* American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* § 309.81 (3d ed. 1980).

that evidence is irrelevant will not be overturned absent abuse of discretion. *Oliver v. Pacific Northwest Bell Tel. Co.,* 106 Wn.2d 675, 684, 724 P.2d 1003 (1986); *State v. Demos,* 94 Wn.2d 733, 619 P.2d 968 (1980). However, such evidence should be closely examined in light of any evidence by the State which has put the complaining witness' mental state at issue in disproving consent, as would be the case if "rape trauma syndrome" testimony were allowed.

 Further issue was taken of certain hearsay statements of the complaining witness, allowed over defense objection. Statements to Sue Olivieri, her daughter Jill Olivieri, and Darrin Hildebrand, were made within hours of the alleged rape while R.J. was still distraught over the event. As such, they qualified as excited utterances under ER 803(a)(2) and were admissible. The principal elements of the exception are a sufficiently startling event and a showing that the declarant was still under the stress of excitement while making the statement. *State v. Flett,* 40 Wn. App. 277, 699 P.2d 774 (1985). All elements were met here.

As to R.J.'s statements to her mother several days after the event in question, defense objected that it could not be an excited utterance. That is correct. However, the testimony was offered to explain the mother's actions in calling the Rape Crisis Clinic and in taking R.J. immediately to Deaconess Hospital. It was not offered for the truth of the matter asserted, and therefore was not hearsay. It was admissible. ER 801(c).

Reversed and remanded.

GREEN, C.J., and McINTURFF, J., concur.

After modification, further reconsideration denied January 23, 1987.

Review granted by Supreme Court March 31, 1987.