IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77903-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CRUZ ROBERT BLACKSHEAR, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: July 29, 2019 |

HAZELRIGG-HERNANDEZ, J. — Cruz Blackshear seeks reversal of his conviction for one count of violation of two separate domestic violence no-contact orders with two prior convictions for violating the provisions of an order. He argues that the trial court erred in admitting evidence of five prior convictions for violation of a court order and that the State's evidence was insufficient to prove beyond a reasonable doubt that he knowingly violated the orders. Because the trial court did not abuse its discretion in admitting the only prior conviction challenged at trial and a rational finder of fact could conclude that he knowingly violated the orders, we affirm in large part. In light of State v. Ramirez,[1] the case is remanded for an order striking the criminal filing fee and biological sample fee.

---

[1] 191 Wn.2d 732, 426 P.3d 714 (2018).

## FACTS

Cruz Blackshear was ordered to have to have no contact with Shannon McCarty by two separate court orders issued in February and July 2016. Blackshear's signature appeared on the first order acknowledging receipt, while the second indicated that he refused to sign but was present and served with a copy of the order. Both orders contain the following language: "You can be arrested even if the person protected by this order invites or allows you to violate the order's prohibitions. You have the sole responsibility to avoid or refrain from violating the order's provisions. Only the court can change the order upon written request."

In August 2017, a plainclothes police officer in an unmarked vehicle saw Blackshear and McCarty at a park together. The officer recognized them from a prior incident in April 2017 when Blackshear was arrested for violating the same no-contact orders. He confirmed their identities by looking at photographs from the Department of Licensing. The officer also performed a records check and found that there were two active, valid no-contact orders listing Blackshear as the respondent and McCarty as the protected party. Uniformed officers arrived and arrested Blackshear. When questioned about their identities, both Blackshear and McCarty separately told officers that McCarty's name was Jasmine Baker.

The State's amended information charged Blackshear with violations of two no-contact orders issued on February 13, 2016 in Lynnwood Municipal Court and July 1, 2016 in King County Superior Court. This charge also alleged that

Blackshear had at least two prior convictions for violating the provisions of similar orders, which elevated the current offense to a felony.

During pretrial motions, the State proposed a jury instruction regarding five numbered exhibits showing judgments entered against Blackshear that it anticipated offering into evidence. The instruction directed the jury to accept as true that Blackshear was the person convicted in each of the judgments and that each of the convictions were based on violations of court orders issued under RCW 26.50.110(5). Blackshear's counsel responded:

> Your Honor, the State is seeking to admit five prior convictions, and they only need to have two. So I am not quite sure why they are seeking to admit five at the evidentiary stage.
> And while yes, we would stipulate that this—the defendant was the person named in the exhibits, I am concerned that the State is seeking to bring in so many exhibits.
> One in particular refers to the fact that it was a felony and then reduced to a misdemeanor. I think that's the most recent one, and it's going to be proposed exhibit, I think, 7, but they haven't been numbered yet so I am not sure.
> And given that the State is seeking to admit more than is necessary for the jury, in particular, I would ask that that one be excluded because it contains information that the jury could run with and speculate about why it was reduced and things like that.
> And it is repetitive and beyond what the jury needs to find.

The court clarified that "counsel's objection just goes to striking 7 in that instruction, the reference to 7 . . . and the exhibit?" Defense counsel agreed and explained:

> While the State is entitled to potentially present evidence of more than two priors on the theory that the jury may have a problem with one of the priors, but they have—without number 7, which I think does potentially raise questions among the jurors just because of what is in the document, that that would still leave the State with plenty of spares if the jurors have problems with any of the priors without bringing in potentially prejudicial information that a jury may end up speculating about.

The State argued that these prior violations were relevant to show that Blackshear knowingly violated the no-contact orders and "that it wasn't a mistake, that he had no reason to trust [McCarty] that [the orders were] lifted because he had been through this process before." When ruling, the court framed the objection as "a request from defense to strike Exhibit Number 7, based on it being cumulative and unduly prejudicial." The court ruled that "the evidence is admissible because the other charges are admissible, and so the motion to strike number 7 is denied." Defense counsel did not object when the State moved to admit the five exhibits showing Blackshear's prior convictions into evidence, and the exhibits were admitted.

The jury found Blackshear guilty as charged and found by special verdict that Blackshear and McCarty were members of the same family or household. Blackshear was sentenced to a total term of confinement of 60 months. He was ordered to pay a criminal filing fee of $200 and a biological sample collection fee of $100. He timely appealed.

## DISCUSSION

Blackshear contends that the State presented insufficient evidence to prove the knowledge element of the charge and that the trial court erred in admitting evidence of his past convictions for violation of a court order and in imposing certain legal financial obligations. In a statement of additional grounds for review, he also contends that the court erred in sentencing him within the standard range.

I.      Sufficiency of Evidence

Blackshear argues that the State failed to prove that he knowingly violated the no-contact orders because McCarty falsely told him the orders had been dismissed.

Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). We draw all reasonable inferences in favor of the State. Id. When evaluating the sufficiency of the evidence, we consider circumstantial and direct evidence equally reliable. State v. Delmarter, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

The jury was instructed that, to show that Blackshear committed the crime of violation of a court order, the State had to prove: (1) that he was the subject of a no-contact order on August 10, 2017, (2) that he knew of the existence of the order, (3) that he knowingly violated the order, (4) that he had been convicted twice before of violating the provisions of a court order, and (5) that the violation occurred in Washington.  The jury instructions also included an explanation of the knowledge requirement:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance, or result when he or she is aware of that fact, circumstance, or result. It is not necessary that the person know that the fact, circumstance, or result is defined by law as being unlawful or an element of a crime.

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
>
> When acting knowingly is required to establish an element of a crime, the element is also established if a person acts intentionally.

Blackshear challenges only the third element of the crime, arguing that the State failed to prove that he knowingly violated the orders. A certified copy of a no-contact order with the defendant's signature on it is sufficient evidence to establish the defendant's knowledge of the order's existence. See State v. France, 129 Wn. App. 907, 911, 120 P.3d 654 (2005) (finding that error in admitting the defendant's confession of his knowledge of the no-contact order was harmless when the record contained a certified copy of the no-contact order with the defendant's signature on it). The jury was required to find that Blackshear had actual knowledge that the orders were still in place, but was permitted to make such a finding based on circumstantial evidence. State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).

The State presented evidence that Blackshear had been arrested in April 2017 for violation of the same no-contact orders. The State's evidence was sufficient to establish that Blackshear knew of the existence of the orders at least until April 2017. The only evidence that Blackshear presented to show that he no longer knew these orders were in place four months later was testimony from his girlfriend, McCarty, who testified that she falsely told Blackshear that all of the no-contact orders had been dismissed. However, the State also presented evidence that both McCarty and Blackshear separately gave the police the same false name for McCarty when they were apprehended at the park. A rational trier of fact could

reasonably infer that the two had made a plan to give a fake name if they were discovered together because they both knew that the no-contact orders were still in place. The evidence was sufficient to show that Blackshear knowingly violated the orders.

## II.    Prior Convictions

Blackshear contends that the trial court erred in admitting evidence of five of his prior convictions for violation of a no-contact order when the State was required to prove only two. Generally, a trial court's rulings as to the admissibility of evidence will not be disturbed absent an abuse of discretion. State v. Pirtle, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). We will only find an abuse of discretion where a trial court's decision is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

All relevant evidence is admissible except as limited by the other evidentiary rules. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice" or if it would constitute "needless presentation of cumulative evidence." ER 403. Evidence of a person's other crimes is not admissible to prove the person's character "in order to show action in conformity therewith[,]" but may be admissible for other purposes, including proof of intent, knowledge, or absence of mistake or accident. ER 404(b).

A. Preservation of Error for Appeal

The State argues that this issue is not properly preserved for appeal because defense counsel only objected to the admission of one of the three challenged convictions at trial and the objection was not based on ER 404(b).

A defendant fails to preserve an issue for review when he fails to object or move to strike allegedly erroneous evidence at trial, therefore depriving the trial court of the opportunity to prevent or cure error. State v. Kirkman, 159 Wn.2d 918, 926, 115 P.3d 125 (2007). Appellate courts usually will not consider issues which were not raised at the trial court, but an appellant may raise an issue for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3). The erroneous admission of a defendant's other crimes is not an error of constitutional magnitude. State v. Kidd, 36 Wn. App. 503, 507, 674 P.2d 674 (1983). Therefore, we will not consider an appeal of allegedly erroneous admission of other crimes under ER 404(b) unless the issue was raised before the trial court.

Although Blackshear raised a vague objection at trial to the admission of "so many exhibits," the court confirmed that he was only challenging exhibit 7. Because he did not challenge the admission of the other two prior convictions to which he now assigns error during pretrial motions or when they were offered into evidence, Blackshear has waived review of those exhibits.

The State also argues that Blackshear did not challenge exhibit 7 based on ER 404(b) at the trial court and therefore cannot raise this issue on appeal. "A party may only assign error in the appellate court on the specific ground of

evidentiary objection made at trial." State v. Collins, 45 Wn. App. 541, 546, 726 P.2d 491 (1986) (citing State v. Guloy, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985)). An appellant may not assign error "to an evidentiary ruling where the objection at trial was insufficient to apprise the trial judge of the grounds of objection asserted on appeal." State v. Maule, 35 Wn. App. 287, 291, 667 P.2d 96 (1983).

Here, Blackshear did not mention ER 404(b) when challenging the admission of exhibit 7. The court seemed to interpret his objection as a challenge under ER 403. Although the court did not state this interpretation explicitly, it is evidenced by the fact that the court mirrored the language of ER 403 when restating Blackshear's objection to exhibit 7 as "cumulative and unduly prejudicial." Blackshear's argument was not sufficient to allow the trial judge to assess the proffered evidence under ER 404(b). We will not evaluate the evidence under ER 404(b) for the first time on appeal.

B. Admissibility

Because Blackshear may only assign error on the ground of his evidentiary objection at the trial court, we will review the trial court's application of ER 403 to exhibit 7. The trial court is expected to engage in a balancing test to analyze whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. State v. Coe, 101 Wn.2d 772, 782, 684 P.2d 668 (1984). "The balance may be tipped toward admissibility if the evidence is highly probative or if the undesirable characteristics of the evidence are minimal. Conversely, the balance may be tipped towards exclusion if the evidence is of minimal probative

value or if the undesirable characteristics of the evidence are very pronounced." State v. Rice, 48 Wn. App. 7, 13, 737 P.2d 726 (1987). Although most evidence is prejudicial in the sense that it is used to convince the jury to come to a specific conclusion, evidence is unfairly prejudicial if it is "likely to arouse an emotional response rather than a rational decision among the jurors." Id. "[T]he balancing test contemplated by ER 403 is left to the discretion of the trial court whose decision will not be overturned except for abuse." Guloy, 104 Wn.2d at 421.

When considering whether to exclude exhibit 7, the court weighed the State's argument that the evidence of the prior convictions would help the State prove the required element of knowledge against the potential for undue prejudice or needlessly cumulative evidence. The court found it important that McCarty's testimony would be attacking the knowledge element. The court denied the motion to strike, noting that "if there was no independent attack on the knowledge element, I might grant this motion. But given that the victim is going to try and sort of offer testimony to weaken that, I think the State is obligated to put forth its best case." The trial court did not abuse its considerable discretion in admitting the exhibit.

III.    Legal Financial Obligations

Blackshear contends that the trial court erred in imposing a $200 criminal filing fee and a $100 biological sample fee on an indigent defendant. The State argues that the fees were mandated by statute at the time Blackshear was sentenced, but concedes that they should now be stricken in light of recent changes to the law. After Blackshear was sentenced, the legislature made it impermissible to impose discretionary costs on indigent defendants, and the

Supreme Court held that this change applied prospectively to cases on appeal. Laws of 2018, ch. 269 § 17(2)(h); Ramirez, 191 Wn.2d at 747. Because the parties do not dispute this issue, the case should be remanded for an order striking the criminal filing fee and biological sample fee.

IV.    Statement of Additional Grounds for Review

In a statement of additional grounds for review, Blackshear challenges his sentence on two grounds.[2] First, he contends that the trial court failed to consider mitigating circumstances and erred in sentencing him within the standard range. Second, he contends that the judge was biased against him because Blackshear had been tried in front of the same judge in a prior prosecution.

A. Sentencing

The court may impose any sentence within the applicable standard sentence range that it deems appropriate. RCW 9.94A.530(1). A sentence within the standard range for an offense is not appealable. RCW 9.94A.585(1). The court may impose an exceptional sentence below the standard range if it finds by a preponderance of the evidence that, to a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident. RCW 9.94A.535(1)(a).

Blackshear does not challenge the computation of his offender score or the standard sentencing range. The State calculated Blackshear's offender score to be 12. The State listed the standard sentence range for a Level V offense with an

---

[2] Blackshear also restates his theory of the case as an additional ground for review, which we construe as another challenge to the sufficiency of the evidence. The issue was addressed above.

- 11 -

offender score of nine or more is "60–60" months. Blackshear was sentenced to 60 months. Because his sentence was within the standard range, it is not appealable as a matter of law.

B. Appearance of Fairness

Blackshear contends that the trial court refused to consider an exceptional sentence below the standard range because he had been tried before the same judge in a prior prosecution for robbery. The judge remarked before jury selection that he had presided over a prior prosecution of Blackshear for robbery a few years previously. Defense counsel indicated that she was not aware of that, and the court moved on to conduct voir dire. The court made another reference to Blackshear's prior trial at sentencing. When explaining the policy considerations underlying the no-contact orders, the court remarked, "One of the things that's kind of true about you is that you have been involved in a criminal life-style for as long as I've known you and I don't think this is any different." Blackshear's 2013 conviction for second degree robbery appeared in the State's sentencing memorandum.

"Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial and neutral hearing." State v. Gamble, 168 Wn.2d 161, 187, 225 P.3d 973 (2010). We presume that judges perform judicial functions without bias. Kay Corp. v. Anderson, 72 Wn.2d 879, 885, 436 P.2d 45 (1967). Alleged errors usually may not be raised for the first time on appeal. RAP 2.5(a). Errors affecting constitutional rights are not barred by failure to raise the issue at

the trial court. Id. Complaints under the appearance of fairness doctrine are not of constitutional magnitude, and must be raised promptly once a party discovers a basis for recusal. State v. Blizzard, 195 Wn. App. 717, 725, 381 P.3d 1241 (2016). "Delaying a request for recusal until after the judge has issued an adverse ruling is considered tactical and constitutes waiver." Id. at 725–26; see also State v. Tolias, 135 Wn.2d 133, 140, 954 P.2d 907 (1998) ("A waiver analysis is appropriate in this case because the record does make clear that Defendant had ample opportunity to raise the issue but apparently decided to forgo it.")

The Statement of Additional Grounds does not provide any argument that this appearance of fairness objection implicated Blackshear's constitutional rights, nor does it point to any indication that the issue was raised before the trial court. On the record before us, there does not appear to be justification for reversal on this basis.

Affirmed in part, remanded in part.

WE CONCUR:

- 13 -