FILED
COURT OF APPEALS
DIVISION II

2015 SEP -9 AM 11: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 46015-7-II |
| Respondent, | |
| v. | |
| HEATHER DAWN ROARK, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Heather Dawn Roark appeals her convictions on three counts of delivering methamphetamine, one count of possessing methamphetamine with intent to deliver, and the resulting sentences. Roark argues that (1) the trial court erred by failing to apply the proper analysis under ER 404(b) before admitting evidence that third parties threatened and assaulted the confidential informant who testified against her; (2) the trial court erred in admitting irrelevant evidence; (3) she received ineffective assistance of counsel when her attorney failed to request a limiting instruction concerning this evidence; and (4) the trial court erred in running her four school zone sentence enhancements consecutively to each other.

We hold that (1) because Roark did not raise any objection under ER 404(b) to the evidence at issue during trial, her ER 404(b) challenge is waived; (2) the trial court did not abuse its discretion in admitting evidence that third parties threatened and assaulted the confidential

informant as relevant to the confidential informant's credibility and Roark's consciousness of guilt under ER 402; (3) Roark's related claim of ineffective assistance of counsel fails because any limiting instruction would have emphasized the threat and assault evidence and would not have changed the trial's outcome; and (4) because of the Washington Supreme Court's recent decision in *State v. Conover*, ___ P.3d ___, 2015 WL 4760487 (Wash. Aug. 13, 2015), the trial court erred in imposing Roark's multiple school zone sentence enhancements consecutive to each other. Accordingly, we affirm Roark's convictions but remand for resentencing with instructions to the trial court to impose Roark's multiple school zone sentence enhancements consecutive to the base sentences for the drug and bail jumping convictions, but concurrent to each other.

## FACTS

During May 2011, Bremerton detectives investigated Roark and Adam Carter for possible drug violations. Paid informant Robert White made three controlled buys of methamphetamine from Roark and one from Carter at their residence in late May.

After the four buys occurred, the police obtained a warrant to search the residence. While executing the search warrant, officers found a baggie of methamphetamine dissolving in the toilet and another baggie of methamphetamine in the bathroom garbage. They also found methamphetamine, baggies, and methamphetamine pipes in the bedroom. In addition, the search revealed a digital scale and buy money from one of the controlled buys.

After waiving her *Miranda[1]* rights, Roark told the police that she and Carter had been selling methamphetamine from the house for a few months. She admitted that when she heard the officers at the door, she tried to dispose of the drug.

The State charged Roark with three counts of delivering methamphetamine, one count of possessing methamphetamine with intent to deliver, and three counts of bail jumping after she failed to appear at scheduled court hearings.[2] The State also alleged that each drug offense occurred within 1,000 feet of school grounds or a school bus stop.

When Roark's trial began on December 18, 2013, White testified about the four buys. White explained that he engaged in the buys to work off his girlfriend's charges and to make money. After his cross-examination, the trial recessed for the day.

Before the jury returned on December 19, the prosecutor notified the trial court that he had some information to discuss. The prosecutor described that information as follows: White had appeared in court the day before, December 18, with a black eye. 3 RP 319. White received his black eye a few days earlier after an unknown assailant approached him, asked his name, and struck him in the face. After White testified on December 18, Roark made a phone call from jail in which she asked Steve Irwin to get as many people as possible in court the next morning because "her 'rat'" would be testifying again. 3 Verbatim Report of Proceedings (VRP) at 320. In an

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Roark does not challenge her bail jumping convictions, so we do not set forth the testimony that supports them.

earlier call on December 14, Roark had stated that White and his girlfriend were responsible for her being in custody. Finally, White had heard that someone had placed a bounty on his head.

The prosecutor argued that Roark's jail calls linked all of this information to her and that this evidence was admissible to show her consciousness of guilt. When the defense asked for an offer of proof and a continuance, the prosecutor responded that White might not be willing to return to court.

The trial court ruled that because White's credibility had been questioned during cross-examination, the State was entitled to explore his awareness of any threats or physical violence related to his testimony. When the defense again sought an offer of proof, the trial court granted that request.

During the offer of proof, White testified that several months earlier, he had received threatening e-mails on Facebook from Ryan Higgins, Roark's former boyfriend. The e-mails stated that White was a "snitch." 3 VRP at 361. White added that a friend had told him the previous week that Higgins had put a bounty on his head and wanted to buy photographs of White being beaten up. White stated that the same night, someone had punched him in the face and fled. White added that he thought Higgins was trying to help Roark. White also testified that he was concerned about seeing an acquaintance in the courtroom that day who had no reason to be in court.[3] White ended the offer of proof by stating that he was afraid to testify because Roark was known for seeking retribution.

---

[3] The trial court noted for the record that the man about whom White expressed concern was sitting in court with Steve Irwin, the recipient of Roark's December 18 phone call.

The State argued that the evidence regarding the threats, assault, and Roark's phone calls was admissible to show that White was nervous about testifying. When the defense argued that the connection between Roark and the information presented was too speculative, the prosecutor responded that the evidence was admissible to rebut defense efforts to impeach White.

The trial court referred to ER 402 in ruling that the evidence regarding the assault and Higgins' emailed threats was relevant to White's ability to testify and Roark's consciousness of guilt. The court added that the evidence regarding the bounty was admissible to show White's state of mind. White also could testify that the presence of his acquaintance in court with Irwin contributed to his fear. White testified on redirect accordingly.

When trial resumed the following Monday, the State sought permission to play excerpts from Roark's December 14 and 18 phone calls for the jury. The defense objected and asserted that the State had misinterpreted the calls and that they were irrelevant to any suggestion that Roark had anything to do with White getting hit and being fearful. The defense further argued that even if the calls were relevant, they were too prejudicial to admit.

After listening to the calls, the trial court ruled that part of the first call, in which Roark stated that White did the buys for his girlfriend, was probative of Roark's consciousness of guilt. The court further ruled that Roark's statement in the second call that "my rat is going to testify" was relevant to White's state of mind while testifying as well as Roark's consciousness of guilt. The court added that the calls, consisting of Roark's own words, were not unfairly prejudicial. The trial court granted defense counsel's request to have the calls played for the jury in their entirety.

After the jury found Roark guilty as charged, the trial court granted her request for a DOSA sentence.[4]  Although Roark argued that her four school zone enhancements should run concurrently to each other, the trial court imposed them consecutively.  The court imposed a total of 186 months on the drug charges, with 93 months to be served in prison and 93 months in treatment.  The 186 months included 96 months for the four consecutive 24-month school zone enhancements.  The court ran the 60-month sentences for the bail jumping convictions concurrently to each other and concurrently to the DOSA sentence.  Roark now appeals her convictions and sentence.

## ANALYSIS

A.    ADMISSION OF THREATS AND ASSAULT AGAINST WHITE

Roark argues that the trial court erred in admitting the evidence of Higgins' threats against White, as well as the assault upon White.  We disagree.

1. ER 404(b)

Roark argues primarily that the trial court erred because it admitted White's testimony without addressing the requirements for admissibility under ER 404(b).  Roark made no such objection at trial.

A party may only assign error on appeal based on the specific ground of the evidentiary objection at trial.  *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986); *State v. Collins*, 45 Wn. App. 541, 546, 726 P.2d 491 (1986), *review denied*, 107 Wn.2d 1028 (1987).  An objection to the admission of evidence based on relevance fails to

---

[4] DOSA is an abbreviation for a Drug Offender Sentencing Alternative sentence imposed under RCW 9.94A.660.

preserve the issue for appellate review based on ER 404(b) grounds.[5] *State v. Jordan*, 39 Wn. App. 530, 539, 694 P.2d 47 (1985), *review denied*, 106 Wn.2d 1011 (1986), *cert. denied*, 475 U.S. 1039 (1987). Here, Roark objected to White's testimony based only on relevance. Consequently, we hold that she did not preserve the ER 404(b) issue for appeal.

### 2. Relevance

Roark's attorney objected to admission of the information regarding the threats from Higgins and the assault because their connection with Roark was too speculative. We review the trial court's rejection of this argument for abuse of discretion. *State v. Bourgeois*, 133 Wn.2d 389, 399, 945 P.2d 1120 (1997).

Evidence is relevant if it has a tendency to prove or disprove a fact that is of some consequence in the context of the other facts and the applicable substantive law. ER 401; 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE, Rule 401, at 125 (2014-15 ed.). All relevant evidence is admissible, but it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. ER 402, 403.

Evidence that a defendant threatened a witness is relevant because it reveals a consciousness of guilt. *State v. Moran*, 119 Wn. App. 197, 218, 81 P.3d 122 (2003), *review denied*, 151 Wn.2d 1032 (2004); 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 402.4, at 39 (5th ed. Supp. 2015). Such evidence is admissible for this substantive

---

[5] Appellate counsel also refers to ER 602, 801, and 802 in arguing that the trial court committed evidentiary error. Here again, the failure to raise these objections below waives these claims of error on appeal.

purpose and to evaluate a witness's credibility if there is a connection between the defendant and the reluctance of any witness to testify. *Bourgeois*, 133 Wn.2d at 400.

Here, the evidence showed that Higgins, Roark's former boyfriend, made online threats to White after the charges resulting from White's controlled buys were filed. In addition, there was evidence that someone told White that Higgins had placed a bounty on his head, that Roark complained in a phone call that White was responsible for the buys, and that on the evening of the same day as the "bounty" remark, someone assaulted White. In a second phone call made a few days later, Roark asked Steve Irwin to "join the forces" in court the following day because "my rat" would be testifying. 4 VRP at 527-28. A man White knew from the drug community sat with Irwin in court the next day.

On appeal, Roark assigns error only to the admission of Higgins' threats and the assault against White. When viewed in the context of the other evidence described above, there is a sufficient connection between Roark and the challenged evidence to render that evidence relevant and admissible to show White's reluctance to testify, as well as Roark's consciousness of guilt. The fact that the State contended during closing argument that the evidence was relevant only to the issue of White's motivations while testifying is irrelevant to our assessment of the trial court's ruling.

In addition to being relevant, this evidence was not unfairly prejudicial. *See Carson v. Fine*, 123 Wn.2d 206, 223, 867 P.2d 610 (1994) (unfair prejudice is caused by evidence likely to arouse an emotional response rather than a rational response among jurors). White's testimony regarding Higgins' threats and the assault was unlikely to elicit an emotional rather than rational

response from the jury. Thus, the evidence was not unfairly prejudicial. We conclude that the trial court did not abuse its discretion in admitting evidence of the threats and assault against White.

## B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Roark argues next that she received ineffective assistance of counsel when her attorney failed to request a limiting instruction concerning the jury's use of the evidence concerning Higgins' threats and the unknown assailant's assault. We disagree.

This issue presents a mixed question of law and fact that we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To demonstrate that she received ineffective assistance of counsel, a defendant must show that her counsel's performance was deficient and that the deficiency was prejudicial. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *State v. Barragan*, 102 Wn. App. 754, 762, 9 P.3d 942 (2000). Counsel's performance was deficient if it fell below an objective standard of reasonableness. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). Matters that go to trial strategy or tactics do not show deficient performance. *Grier*, 171 Wn.2d at 33; *State v. Rainey*, 107 Wn. App. 129, 135-36, 28 P.3d 10 (2001), *review denied*, 145 Wn.2d 1028 (2002). We strongly presume that counsel's conduct constituted sound trial strategy. *Barragan*, 102 Wn. App. at 762. Prejudice exists if there is a reasonable probability that the result of the proceeding would have differed had the deficient performance not occurred. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816 (1987).

Here, a limiting instruction would have highlighted the evidence concerning Higgins' threats and the assault. Therefore, we can presume that counsel's decision not to request a limiting instruction was legitimate trial strategy because such an instruction would have reemphasized damaging evidence. *See State v. Donald*, 68 Wn. App. 543, 551, 844 P.2d 447 (finding failure to

request limiting instruction was tactical), *review denied*, 121 Wn.2d 1024 (1993). Moreover, we see little likelihood that the trial's outcome would have differed had the trial court offered the jury a limiting instruction. Thus, even if counsel's performance was deficient, Roark fails to show prejudice. We reject Roark's claim that she received ineffective assistance of counsel when her attorney failed to request a limiting instruction concerning the threats and the assault against White.

## C. SCHOOL ZONE ENHANCEMENTS

Finally, Roark argues that the trial court erred when it ran her four school zone enhancements consecutively instead of concurrently to each other. Roark argues that the ambiguity in the applicable statute, RCW 9.94A.533(6), requires the enhancements to run concurrently. The Supreme Court's recent decision in *Conover*, 2015 WL 4760487, controls.

RCW 9.94A.533 addresses sentence adjustments, and subsection (6) provides as follows:

> An additional twenty-four months shall be added to the standard sentence range for any ranked offense involving a violation of chapter 69.50 RCW if the offense was also a violation of RCW 69.50.435 or 9.94A.827. All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter.[6]

The first sentence of RCW 9.94A.533(6) is not at issue. There is no question that Roark committed ranked offenses under chapter 69.50 RCW in violation of RCW 69.50.435, which requires enhanced penalties for drug offenses committed within 1,000 feet of a school bus stop or school grounds. RCW 69.50.401(1), .435(1)(c), (d). At issue here is the meaning of the second sentence in RCW 9.94A.533(6): "All enhancements under this subsection shall run consecutively to all other sentencing provisions, for all offenses sentenced under this chapter."

---

[6] We cite the current version of RCW 9.94A.533(6) for clarity. *State v. Swiger*, 159 Wn.2d 224, 227 n.3, 149 P.3d 372 (2006).

10

The Supreme Court recently resolved this issue in *Conover* by comparing the language of RCW 9.94A.533(6) with the contrasting language in the statutory provisions addressing other sentence enhancements. 2015 WL 4760487, *3 (citing RCW 9.94A.533(3)(e) (firearm enhancements shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements) and RCW 9.94A.533(4)(e) (deadly weapon enhancements shall run consecutively to all other sentencing provisions, including other deadly weapon or firearm enhancements)). The *Conover* court concluded that the legislature's choice of different language indicates a different legislative intent and does not require multiple school zone enhancements to be imposed consecutively. 2015 WL 4760487, *4.[7] Therefore, the *Conover* court held that "RCW 9.94A.533(6) requires the trial court to run Conover's bus stop enhancements consecutively to the base sentences for each [convicted offense], but not consecutively to each other." *Id.* at *7.

We are constrained to follow *Conover*. Therefore, we affirm Roark's convictions but remand for resentencing with instructions to the trial court to impose Roark's multiple school zone

---

[7] In 2006, legislature added the second sentence to RCW 9.94A.533(6). *Conover*, 2015 WL 4760487, *6. The *Conover* court held that the second sentence still does not require trial courts to run multiple school zone enhancements consecutively, but we note that the legislative history concerning the 2006 amendment suggests a different result. *See* FINAL B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 6239, at 4, 59th Leg., Reg. Sess. (Wash. 2006) (describing sentencing modification providing that "[s]entence enhancements for ranked drug offenses are to be served consecutively"); H.B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 6239, at 7, 12, 59th Leg., Reg. Sess. (Wash. 2006) (stating that statutory language was clarified to specify that all sentence enhancements relating to violations of the Uniform Controlled Substances Act in drug-free zones are to run consecutively to all other sentencing provisions for all sentences under the Sentencing Reform Act); HOUSE CRIMINAL JUSTICE & CORRECTIONS COMM., H.B. BILL ANALYSIS, ON ENGROSSED SECOND SUBSTITUTE S.B. 6239, at 6, 15, 59th Leg., Reg. Sess. (Wash. 2006) (same); S.B. REP. ON ENGROSSED SECOND SUBSTITUTE S.B. 6239, at 5, 59th Leg., Reg. Sess., at 5 (Wash. 2006) (noting sentencing modification requiring enhancements for ranked drug offenses to be served consecutively).

No. 46015-7-II

sentence enhancements consecutive to the base sentences for the drug and bail jumping convictions, but concurrent to each other.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Maxa, P.J.

_____
Sutton, J.

12