# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

ARMEL MANZUMBA LUMEMBO,

                Appellant.

DIVISION ONE

No. 79651-8-I

UNPUBLISHED OPINION

DWYER, J. — Armel Manzumba Lumembo appeals from the judgment entered on a jury's verdict finding him guilty of indecent liberties. He contends that prosecutorial misconduct deprived him of a fair trial, that the trial court erroneously admitted evidence, and that the trial court erred in denying his motion for a new trial based on a claim of ineffective assistance of counsel. Finding no error, we affirm.

I

Armel Manzumba Lumembo met C.N. at Amber, a Seattle nightclub. C.N. and her friend Rahab Mwaniki had traveled from Tacoma for a night out. C.N. had a young son who she was still breastfeeding and had not had the opportunity to go out drinking in almost two years. C.N. had one or two glasses of wine at Mwaniki's home before driving herself and Mwaniki to Seattle. C.N. also drank a shot of tequila at a different club before the two women went to Amber. By the time C.N. and Mwaniki arrived at Amber, C.N. was not feeling well and had

stopped drinking alcohol. Mwaniki testified that while at Amber, C.N. seemed very intoxicated and was "dancing with everyone recklessly." During this period, Lumembo and C.N. met and danced together. According to Lumembo, he and C.N. began kissing on the dance floor.

At some point, C.N. stepped outside to get some fresh air. A friend of Mwaniki's informed her that C.N. was outside. Mwaniki went outside to check on C.N. and found her vomiting and leaning on Lumembo for support. Mwaniki asked her friend Stephen Whitmore to hold C.N.'s purse and stay with C.N. while she went to get some water. Whitmore testified that C.N. appeared too intoxicated to be aware of her surroundings and that Lumembo was touching her waist and buttocks.

Mwaniki returned with water and found Whitmore and C.N. at C.N.'s car. Once Mwaniki had returned, Whitmore departed. At this time, C.N. was sitting in the driver's seat and dry heaving. She was not able to talk. Lumembo was also present, standing nearby. Mwaniki determined that C.N. needed "something in [her] stomach," and went to a nearby hot dog stand to "get something for her to eat." When Mwaniki returned, C.N. and her car, which contained Mwaniki's keys and cell phone, were gone. Mwaniki spent the next several hours searching for C.N., enlisting the help of a bouncer employed by Amber before eventually getting a hotel room in Seattle.

At this point, Lumembo's testimony and C.N.'s testimony diverge dramatically. According to Lumembo, C.N. asked him to drive her car away and began touching him sexually while he drove. He testified that they had

consensual sex in the backseat of the parked car in two locations. He testified that, thereafter, the two talked for a while and exchanged contact information. At about 5:00 a.m., Lumembo drove the car back to where his car was parked and left C.N. to sleep in her car.

C.N. testified that after Mwaniki left, someone moved her into the back seat of her car and drove away. She drifted in and out of consciousness. C.N. awakened and felt a man on top of her having sex with her. C.N. attempted to push the man away and felt herself vomiting before passing out once again.

Later that morning, C.N. woke up alone in the backseat of her car. Her dress was up and her underwear was on the floor. She felt throbbing pain in her vagina and anus. There was vomit in the car. C.N.'s mother called her, and C.N. told her that she believed she had been raped. C.N.'s mother instructed her to call the police, which she did. Police officers subsequently arrived. While C.N. was speaking to an officer, Lumembo called her. C.N. ended the call after Lumembo invited her to have breakfast at his hotel.

C.N. was transported to Harborview hospital. She was examined by a sexual assault nurse examiner (SANE), who noted that she had blood pooled in her vagina. The SANE and C.N. decided not to examine the potential injury further because the examination itself can cause additional physical trauma. The SANE also collected C.N.'s underwear, her dress, and a forensic urine sample.

Lumembo was charged with indecent liberties. A jury found him guilty as charged. Lumembo then sent several letters to the court alleging ineffective assistance of counsel. The trial court appointed new counsel to represent him

3

and investigate his claim.  Lumembo's new counsel moved for a new trial based on ineffective assistance of counsel.  The motion was denied.

Lumembo appeals.

II

Lumembo contends that statements made by the prosecutor during her opening statement, her cross-examination of Lumembo, and closing argument constituted prosecutorial misconduct requiring reversal.  We disagree.

Prosecuting attorneys are quasi-judicial officers who have a duty to ensure that defendants receive a fair trial.  State v. Boehning, 127 Wn. App. 511, 518, 111 P.3d 899 (2005).  Prosecutorial misconduct violates this duty and can require reversal.  Boehning, 127 Wn. App. at 518.  The propriety of a prosecutor's conduct is "reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given."  State v. Russell, 125 Wn.2d 24, 85-86, 882 P.2d 747 (1994).

A defendant alleging improper argument by the State bears the burden of proving that the prosecutor's conduct was both improper and prejudicial.  State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012).  Once a defendant establishes that a prosecutor's statements were improper, we determine whether the defendant is entitled to relief by applying one of two standards of review.  Emery, 174 Wn.2d at 760.  The first standard, which applies if the defendant timely objected at trial and the objection was overruled, requires that the defendant show that the prosecutor's misconduct led to prejudice that had a substantial likelihood of affecting the jury's verdict.  Emery, 174 Wn.2d at 760.

The second standard applies if the defendant did not object at trial. In that event, the defendant is deemed to have waived the claim of error unless the defendant can show that the misconduct was "'so flagrant and ill-intentioned that it evinces an enduring and resulting prejudice'" that could not have been cured by a jury instruction. State v. Fisher, 165 Wn.2d 727, 746, 202 P.3d 937 (2009) (internal quotation marks omitted) (quoting State v. Gregory, 158 Wn.2d 759, 841, 147 P.3d 1201 (2006)).

A

Lumembo's first claim of misconduct is that the prosecutor referred to the victim and other witnesses by their first names during the State's opening statement. Lumembo argues that, although he did not object at trial, this was flagrant and ill-intentioned conduct designed to create improper sympathy for the victim. This view is not supported by the record.

Prior to trial, Lumembo requested that the trial court order witnesses to refer to participants in the trial by name, rather than words such as "victim" or "perpetrator." The trial court granted the motion and additionally ordered that counsel use surnames when referencing witnesses or parties. The trial court explained that the purpose of this additional order was to maintain respect and professionalism in the courtroom.

Nearly two weeks later,[1] the prosecutor delivered her opening statement and referred to C.N. and other witnesses by their first names. Lumembo did not

---

[1] The court's ruling occurred at a pretrial hearing on Monday, September 17, 2018. The court was not in session September 24 through September 28. The remainder of the week of September 17 was used for other preliminary matters and voir dire. Opening statements were delivered on Monday, October 1.

object.  The following day, the trial judge addressed the issue sua sponte.  When asked why she had used C.N.'s first name, the prosecutor stated that she wanted to "personalize" C.N.  The following exchange then took place:

> THE COURT:  And I totally understand that.  And defense often likes to do that with their client as well.  But I think it's a more important value in showing respect to people.  So that's the reason for my rule of addressing people by their surnames, and using their surnames in reference to them.  Unless there is really a good reason not to.
>
> [Prosecutor]:  Okay.  My apologies for being disrespectful.
>
> THE COURT:  Oh, no.  I know it was unintentional.  I was just giving you the reason for the rule that I follow.

Because Lumembo did not object, he must show that the prosecutor's use of C.N.'s and other witnesses' first names constituted misconduct so flagrant and ill-intentioned that it resulted in an enduring prejudice that could not have been cured by a jury instruction.  See Fisher, 165 Wn.2d at 747.

Here, there is no evidence that Lumembo was prejudiced by the prosecutor's use of first names in her opening statement.  The purpose of the trial court's order to use surnames was to show respect for the individuals referenced, not to prevent unfair sympathy.  That Lumembo did not object "strongly suggests" that the use of first names did not seem critically prejudicial in the context of the trial.  See State v. Swan, 114 Wn.2d 613, 661, 790 P.2d 610 (1990).

More significantly, the trial court found that the violation of its order was unintentional.  Because it was not intentional, it cannot logically be deemed "flagrant and ill-intentioned."  Given that the trial court had ruled nearly two weeks

6

earlier, and the remedy it ordered was greater than and different from the relief requested by Lumembo (and to advance a different purpose), the trial judge's finding that there was no intentional violation of its ruling is quite understandable.

Finally, there is no evidence that any unfair prejudice would not have been cured by a proper jury instruction. Moreover, Lumembo's timely objection could have prevented several of the instances of the prosecutor's use of C.N.'s and other witnesses' first names.

The violation of the order was not intentional, did not cause enduring prejudice, and any unfair prejudice could have been cured by a proper jury instruction. Lumembo fails to show an entitlement to appellate relief.

B

Lumembo next asserts that the prosecutor's use of the phrase "we know" while listing evidence in closing argument constituted impermissible vouching for the State's witnesses.

During closing argument, the prosecutor used the phrase "we know" numerous times in reference to evidence presented to the jury and in arguing reasonable inferences that could be drawn from that evidence. The prosecutor also displayed a PowerPoint slide with the heading "How do we know that happened here?" Lumembo did not object to the use of the phrase, and his counsel also used the phrase "we know" in reference to admitted evidence during the defense closing argument.

Because Lumembo's counsel also used the phrase "we know" in closing argument, his failure to object to the phrase when used by the prosecutor is

properly deemed to have been tactical. Lumembo, therefore, waived this claim of error.[2] We will not "sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." State v. Scott, 110 Wn.2d 682, 685, 757 P.2d 492 (1988).

C

Lumembo additionally contends that a question that the prosecutor asked him on cross-examination constituted misconduct. Again, we disagree.

Lumembo testified that he witnessed C.N. vomiting several times prior to engaging in sexual contact with her. On cross-examination, the prosecutor asked Lumembo, "What exactly is attractive about a vomiting woman, Mr. Lumembo?" Lumembo's counsel objected and the trial court overruled the objection.

This question appropriately probed the credibility of Lumembo's testimony as to what had occurred. The jury had already heard Lumembo's testimony that he had sex with C.N. shortly after witnessing her vomit. The question did not reveal unknown prejudicial information but merely pointed to a logical weakness in the version of events that Lumembo presented. In the normal course of human behavior, most people do not find a vomiting woman particularly

---

[2] Lumembo's argument is also inconsistent with Washington authority. A prosecutor engages in misconduct by vouching for a witness's credibility. State v. Robinson, 189 Wn. App. 877, 892, 359 P.3d 874 (2015). Vouching occurs when either the prosecution places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony. Robinson, 189 Wn. App. at 892-93. We have determined that the use of the phrase "we know" in closing argument is not improper vouching when it is used by a prosecutor to draw reasonable inferences from the evidence rather than for an improper purpose. Robinson, 189 Wn. App. at 895. Here, there is no evidence in the record that the prosecutor used the phrase "we know" for an improper purpose.

attractive. While Lumembo may have been prejudiced by the question, he was not unfairly prejudiced.

D

Lumembo next argues that the combined effect of prosecutorial misconduct resulting from these three instances entitles him to a new trial due to the cumulative effect of the errors. He is wrong.

Cumulative error is established when, taken alone, several trial court errors do not warrant reversal of a verdict but the combined effect of those errors denied the defendant a fair trial. State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003). It is the defendant's burden to prove that an accumulation of error reached a sufficient magnitude to necessitate retrial. In re Pers. Restraint of Lord, 123 Wn.2d 296, 332, 868 P.2d 835 (1994).

Because Lumembo has not established any errors, he cannot establish the several errors necessary to constitute cumulative error. Thus, his claim fails.

III

Lumembo next avers that evidence of his prior consensual sexual history was admitted in violation of ER 404(b). We disagree.

We review the trial court's evidentiary decisions for abuse of discretion. State v. Bajardi, 3 Wn. App. 2d 726, 729, 418 P.3d 164 (2018). A trial court abuses its discretion when its decision is manifestly unreasonable or is based on untenable grounds or reasons. State v. Taylor, 193 Wn.2d 691, 697, 444 P.3d 1194 (2019).

Prior to trial, Lumembo asked the court to exclude "any 404 evidence." The court agreed. On cross-examination, the prosecutor asked Lumembo several questions about whether it "happen[s] [to him] a lot" that a woman he has recently met has consensual sex with him in a car. Lumembo's counsel objected and a sidebar discussion was held.

Lumembo's counsel later put the content of the sidebar on the record, explaining that the basis for his objection was that the question was "essentially 404 evidence asking about propensity evidence." In allowing the questioning, the trial court did not conduct an ER 404(b) analysis but, rather, ruled that the questioning was relevant and that its prejudicial effect did not substantially outweigh the probative value of the evidence adduced. See ER 403.

> Pursuant to ER 404(b):
>
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Here, the evidence admitted was not ER 404(b) evidence. The State did not seek to prove that Lumembo possessed any character trait by asking the question. Having frequent sexual intercourse in cars is not a character trait. Nor would evidence of any of Lumembo's past acts to prove actions in conformity therewith on the date in question support the State's theory of the case—if Lumembo answered the question in the affirmative, expressing that he had frequent consensual sex in cars, that evidence would tend to support Lumembo's claim that he reasonably believed that he had consensual sex in C.N.'s car on

this occasion. It would not support the State's assertion that this was unlikely.

Thus, the State did not profer the questions for any purpose governed by ER

404(b). Instead, the State sought to impeach Lumembo's testimony with the

question. If he answered "no," this would not support his defense. If he

answered "yes," the jury might disbelieve his answer and, thus, find his other

testimony less believable. Neither goal is prohibited by ER 404.

Accordingly, the trial court was not required to conduct an ER 404(b) analysis.

The trial court did not abuse its discretion by allowing questioning over

Lumembo's objection.

Lumembo also asserts that, although he did not request one, a limiting

instruction should have been provided to the jury with regard to this evidence. A

trial court is not obligated to issue a limiting instruction when none is requested.

ER 105; State v. Russell, 171 Wn.2d 118, 122-23, 249 P.3d 604 (2011). Thus,

this claim also fails.

IV

Lumembo next contends that the trial court erred in admitting evidence of

blood found on C.N.'s dress and underwear. Because he objected to admission

of this evidence in the trial court on different grounds than he now advances,

appellate relief is not warranted.[3]

A party may not raise an objection not properly preserved at trial absent

manifest constitutional error. RAP 2.5(a); ER 103(a). An evidentiary error is not

---

[3] Lumembo does not raise his original objections in his appellate briefing. Thus, we consider any such claims of error abandoned. See State v. Harris, 164 Wn. App. 377, 389 n.7, 263 P.3d 1276 (2011).

a constitutional error. State v. Powell, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). "A party may only assign error in the appellate court on the specific ground of evidentiary objection made at trial." State v. Collins, 45 Wn. App. 541, 546, 726 P.2d 491 (1986) (citing State v. Guloy, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985)). An objection in the trial court on a different ground than that argued on appeal is not sufficient to preserve an alleged error. Powell, 166 Wn.2d at 83-84.

Here, Lumembo objected at trial on the basis that no witness could testify to the appearance of the garments at the time that they were collected and no witness had identified them as belonging to C.N. On appeal, he claims that the bloodstains were irrelevant to whether or not the intercourse was consensual. These are not the same arguments. Because the alleged error is not properly preserved, appellate relief is not warranted.

V

Lumembo avers that the trial court erred by denying his motion for a new trial based on deficiencies in his trial counsel's performance. Because Lumembo does not demonstrate that his counsel performed below an objective standard of reasonableness, his claim fails.

We review a trial court's decision to grant or deny a new trial for abuse of discretion. State v. Lopez, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018). However, that deferential standard does not apply to questions of law and mixed questions of law and fact. Lopez, 190 Wn.2d at 118 (citing State v. Mohamed, 186 Wn.2d 235, 240-41, 375 P.3d 1068 (2016)). Claims of ineffective assistance of counsel present mixed questions of law and fact. Lopez, 190 Wn.2d at 116.

12

Accordingly, we review the trial court's legal conclusions de novo. Lopez, 190 Wn.2d at 118.

To establish ineffective assistance of counsel, a defendant must show both deficient performance and resulting prejudice. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. State v. Stenson, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997). Performance is not deficient if it constitutes a legitimate trial strategy or tactic. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). A strong presumption of effective assistance exists and the defendant bears the burden of demonstrating an absence in the record of a strategic basis for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). Prejudice occurs where there is a reasonable probability that the outcome of the proceeding would have been different had counsel's performance not been deficient. McFarland, 127 Wn.2d at 335. Failure to establish either prong of the test is fatal to the claim of ineffective assistance of counsel. Strickland, 466 U.S. at 687.

Here, Lumembo asserts that the trial court erred in denying his motion for a new trial based on his attorneys'[4] decisions not to call an alcohol and memory expert as a witness to attempt to impeach C.N.'s memory of events or to interview the bouncer who assisted Mwaniki in her search for C.N. However, the attorneys' tactical choice not to call an expert on memory and alcohol was logical

---

[4] Lumembo was represented by two attorneys at trial.

13

given that Lumembo's trial strategy was to argue that C.N. was not too impaired to consent to sexual intercourse.[5]  Calling an expert on memory and alcohol to impeach C.N.'s memory of events on the basis that she was too intoxicated to remember correctly would directly conflict with the version of events that Lumembo testified had occurred.  Instead, Lumembo's attorneys called an expert witness to attempt to impeach C.N. with records of phone calls made from her cell phone during the time period that she claimed to be unconscious.

Additionally, the decision not to interview the bouncer was not deficient given that there is no evidence in the record that the bouncer saw anything relevant.  Moreover, Lumembo's attorneys sought to exploit his absence from trial, arguing that his absence was evidence of an incomplete police investigation and that Mwaniki's testimony regarding her search for C.N. was uncorroborated.  This was a tactical decision.

Lumembo does not show that his counsel performed deficiently.  The trial court correctly denied his motion for a new trial.

---

[5] Notably, Lumembo's counsel successfully moved the trial court to exclude evidence of C.N.'s urine alcohol content.  This was a beneficial ruling, from the defense perspective.

Affirmed.

_____

Dwyer, J.

WE CONCUR:

_____   _____

Verellen, J.                  Leach, J.